Evidence is admissible of the declarations of a testator made at any time subsequent to the execution of the will, which goes to shew that the testator believed the contents of the will to be different from what they really are; or declarations by testator of any other circumstances which shew that it is not his will, are admissible.
The following is the case as it appeared reported to this Court in the statement made by the Court below.
This was a case of a contested probate of a will between the executors and one of the heirs and next of kin: the paper writing purported to have been published and declared as the testator’s last will and testament, in the presence of two witnesses : they declared on examination, that the will was executed at the house of William Blackledge, in Newbern, between sun-rise and breakfast time on some day in August, 1815: that they were called to the house by William Blackledge, for the purpose of attesting a paper, where they found Blackledge and James Reel alone: that they either saw James Reel write or heard him acknowledge his signature : that they did not at the time know what was the nature of the instrument, but subscribed it as witnesses in James Reel’s presence. They believed that James Reel was not drunk, *249 but sober, that they had no conversation with him, re-maiaed but a lew minutes, and left Reel and Blackledge together. One of the subscribing witnesses stated that ho believed, on his entering Blackledge’s house, Reel met him at the door, and asked him to witness the paper 5 that the witness from a fear that he might be signing some obligation or instrument, whereby he might incur liability, attempted to look over the instrument before fixing his signature, when Reel intimated to him -not to do so, and said that it was nothing that could hurt him. It appeared further in evidence that Reel left Blackledge’s house that morning before breakfast; that the will was left with Blackledge, and after Reel’s death ivas produced by Blackledge, enclosed in an envelope, with three seals. The will was in the following words:
“ I, James Reel, of Craven county, being of sound and disposing-t! mind and memory, do make and ordain this my last will and testa- “ ment, in manner and form following:
” Item — J give the sum of two hundred dollars to the children of my is brother John Reel, to them, their executors, administrators and as- “ signs forever. .
“ Item — I give to my brother I,evi Reel one hundred dollars, to him, “ his heirs and assigns forever.
“ Item — I give to my sister Sally Wintly fifty dollars, to her, her - heirs and assigns forever.
“ Acknowledged by the testator at the same time, .
“ As a further part of this will, X give to- my nephews Moses and Al- “ len Ernull, each twenty-five dollars, and to Stephen Ernull 1 give the , “ amount he owes. As witness my hand and seal tins 23d of August, «1815.
“’ Acknowledged, &c. as before,
Lastly, that there was no evidence of revocation.
The Jury found the paper writing produced to be James Reel’s will.
The Defendant moved for a new trial, on three grounds ; 1st. The rejection by the Coui't of material and proper evidence; 2d. Misdirection of the Court ; Sd. Because the verdict was against evidence and law. The motion was overruled, and the judgment of'the Court pronounced that the will was duly proved; whereupon Defendant appealed.
I. The Court rejected proper evidence'on the part of the appellant.
There is no instrument, however solemn, against which fraud may not be averred — Fermou’s case.*
Whenever fraud is averred, parol evidence to prove it is always admissible.
Fraud cloaks itself under forms, and legal sanctions; and if you are not permitted to go beyond these formal sanctions, the law which permits fraud to be averred against them is f do de se.
*256 Both parties here claim under James Reel, whose declarations are offered, and claim subsequently to them.*
The admissibility of the evidence is not only established by these general principles, but sanctioned by precise
Gaston, on this point, was here stopped by the Court.
2. “ That the testimony of the subscribing witnesses proved that he knew,” &c. The Judge has no right to pronounce on the effect of evidence¶ If he be competent to pronounce he has pronounced wrong — for the subscribing witnesses had no conversation, and no means of knowing his state of mind or knowledge of what he was doing.
3. That they might set aside the will for fraud if they could discover any — but th at there must be proof of it. While the Judge pronounce,? there is proof that Reel was sober, he in the strongest language intimates there is no proof of fraud. How can it be said there is no proof when it appears that Reel was a man of naturally weak intellect 5 a habitual drunkard •, always drunk when in *257 town; drunk for ten or eleven days without interimssion ; drunk and silly the night before the will was written; drunk and silly the next morning; drunk throughout that day; drunk on the night while the paper was written ; it is impossible that he shóúld not be besotted in the morning; he goes to Blackledge to got a power of attorney written; when he gets there the design is changed for a will; Blackledge, his attorney, in whom he reposes all confidence, writes it; Reel could not read it himself; there is no proof that Blackledge ever read it to him; the estate is all given away to Blackledge and his associate, and Reel’s repeated efforts to procure the will are all ineffectual. And yet the Court tells the Jury if they could discover any evidences of imposition, they might say it was fraudulent, but they muSt.have proof! ?
As to the finding of the Jury, if there be a well-founded doubt upon it, there ought to- be a new trial— inasmuch as the inheritance is forever bound by it — Baker v. Hart,* — Pemberton v. Pembsrton.†
Evidence of parol declarations, contradicting and subverting the written declarations of a party’s intentions, executed and attested with all the solemnities which the law requires' for the purpose of preventing fraud, perjury, and imposition, should certainly be received with great caution.
Such evidence introduces all the danger which can arise from false and corrupt witnesses, who will swear to declarations which they never heard — from the inattention, stupidity or forgetfulness of witnesses, who misrepresent what they did hear; and from loose and unguarded expressions of a testator, and expressions which he may have used purposely with the view of concealing the manner in which he has disposed of his property; *258 to prevent dissatisfaction among those who hope to be the objects of his bounty.
It is contrary to the spirit of our statute laws to admit such evidence. Wills are required to be in writing : hut if you permit a will in writing to be set aside by evidence of parol declarations, you thereby set up the will which the Law makes, in place of that which the testator has made; and there seems to be little difference between setting up a parol will, and setting aside by parol a will made in writing. Again, our Law says that a will in writing shall not be revoked by parol: Why ? Because of the danger of perjury. But does not the same danger occur in such evidence as is offered here ? You shall not prove that a written will was revoked, for fear of perjured witnesses, but if the same persons will swear that the will never was made, it may be heard ; because forsooth there is not the same danger : In fact, there is more, for while evidence of parol declarations of revocation was received, the Law had defined what expressions would amount to a revocation, but as to this evidence there is no guage. Estates will depend more than ever not only on the integrity and the understanding of witnesses, but on the whim of Jurors, the capacity of the Advocate and the integrity of the Judge — and although from the nature of things, this hazard must be encountered in all judicial proceedings, I should not be disposed to give greater credit or put more to risk in any case than, necessity demands. If such evidence is received at all, (which were it res integra I should think very questionable,) it should be confined to declarations made at the. time the will was made, or so near as to form a part of the res gestee — a time when the mind of the testator was called to the business in which he was engaged ; when it cannot be supposed he said any thing relative thereto with a view of concealing or misrepresenting the manner in which his property was disposed of: when the. attention of the bye-standers would probably be called *259 to the matter in hand : when those whom the testator thought worthy of his confidence would be present, and when no expressions would probably be attributed to him unless they were actually used.
But it is said the evidence is relevant, that the Jury should have heard it, and given it such weight as it merited. The evidence if admissible'is certainly relevant; but it by no means follows that all relevant evidence, by which I mean such evidence as, if true, will conduce to enable a Jury to arrive at a correct result, is admissible. Upon the principle of relevancy, if that were the sole test, hearsay evidence, the declarations of persons interested would be admissible, and if it were possible that a Jury could be composed of such materials as that they could sift the false from the true, such evidence should and would be received; for* as the object of evidence is to elicit truth, it makes no difference what the nature of the evidence is, provided the desired result Can be obtained. Evidence of hearsay or of declarations would be admitted, and their weight left for tire Jury to ascertain; but why are they rejected ? not because we will not respect truth when derived from such sources, but because it would be impossible for a Jury composed of mere men to ascertain what is true and what is false. Reasons of policy therefore direct its exclusion.
As it cannot be assumed as a criterion of the admissibility of evideuce, that it tends, if true, to prove the issue; as the policy of our Law, as expressed in the acts of our Legislature, does not favour the introduction of such evidence as is offered here; as it appears to be of dangerous tendency, and reason would direct its exclusion ; let ns examine what is said by authority, the other witness of the Law\ I had expected that the appellant would have produced some authority to shew that evidence of this kind has been received ; l^ut I have been disappointed.
It is admitted that parol evidence of the declarations has been received, l. to rebufan equity ; 2. to explain a *260 latent ambiguity $ 3. to shew a fraud practised on the testator.
As to tlioso cases in which it has been received to rebut an equity, it will be found generally that they were confined to wiiat passed at the time of making the will, or so near as to form part of the res gestae. And these cases are stronger than that now presented to the Court. The legal operation of the will gives the property to the executor, but from some circumstances apparent upon it, the Court of Equity deems him a trustee for the next of ldn. The parol evidence which is received, is for the purpose of supporting the legal operation of the will, and rebutting an equitable presumption. The Court restrict it to what passed at tiie time; surely a greater latitude would not be allowed to evidence, the effect of which is to destroy the instrument altogether, than is allowed to evidence in its support.
That the same course has been pursued by Judges in Courts of Law, appears from Thomas v. Thomas,|| in which Lord Kenyon says, “ It seems the learned Judge did right in rejecting the evidence, the supposed declarations having been made by the testator long before the will was made, though had they been made at the time of making the will, I should have thought them admissible evidence.” Now if declarations made before wrere not admissible, neither are those made after. If those made after are admissible, those made before would be, though they would not be entitled to the same weight, because the testator might have changed his mind. But both are equally relevant. In Doe on demise of Small v. Allen,¶ parol evidence was given of questions-asked by the testator at the time of executing his will, as to its contents, *262 to set it aside on the ground of fraud. And these two cases shew the distinction for which we contend — that evidence of what passed at the time, or so near as to form a part of the res gestee, is admissible — that evidence of declarations made at other times is inadmissible.
The Judge fin Jackson v. Kniffen) adds, “I think “ the evidence, should have been admitted, and especially “ after it had been proved, that the devisor had been “ guarded and watched over after the date of the will; “ that it had been taken out of his custody and detained, “ notwithstanding his application for it, for the purpose “ of cancelling it, and that his children were denied acs- “ cess to him.” With humility, I must be permitted to question the correctness of this opinion, which makes the admission or rejection of this evidence dependant on any thing extrinsic. If it was not admissible without the existence of the other circumstances, I cannot see how their existence could make it so.
There is another case upon the same point, decided by Judge Story, Smith v. Fenner,* an authority precisely in point, and no light one.
It is true, that if evidence of this nature is rejected, fraud may be successfully practised, but many more will be effected if such evidence should be received: Perjuries will be encouraged — the last wills of testators (]e~ feated. Evils exist on both sides, a wise magistrate will choose the least.
commented on the authorities cited by counsel for the appellant, contending that they did not apply, though some of them established the doctrine that parol evidence might be received of declarations accompanying acts, to shew the intention of the acts.
That such evidence as was offered in the present caso was inadmissible, would appear from Richardson's law of last wills, 279 — 2 Bac. M. 64 Revise,309.
The rule of law as to drunkenness and capacity in a testator, is laid down in the very language used by the Court below, in. Shep. Touch, 403.
*264 The charge as to the testimony of the subscribing witnesses did not infringe the powers of the J ury, or violate the act of 17"96. To say that the subscribing witnesses J ° proved, if believed, is in substance the same thing with saying, the subscribing witnesses said.
It is in terms conceded that parol evidence is admissible to support the averment of fraud, and yet such evidence is asserted to be against the spirit of the statutes requiring wills to be in writing and forbidding parol revocations.
There is no point of the law the spirit of which ought more to be observed than tiiat which declares its abhorrence of fraud, and pronounces all fraudulent acts void. If a signature be procured by fraud to a testament, it is not a written will, it is no will.* And as to the spirit of the statutes forbidding parol revocations, we had none sucli, and parol revocations were admissible.
It is also conceded that where parol evidence is admissible, declarations of the testator may be received. Now it should be remembered that these are not received as a privileged sort of hearsay evidence. The rule as to hearsay evidence applies only to declarations of third persons, witnesses not on oath.† The exception as to res gestae applies only to hearsay evidence, and not to admissions of parties. Such declarations are received as admitted facts as against those admitting them and their privies.
But it is insisted that the admissions of a testator arc not receivable unless made at the moment; and this is attempted to be supported by reason and by authority.
1. By reason : St is said they <e may not have been serious — may be misunderstood — may have been made to deceive.” To this we answer — All this is possible, and it is right that such suggestions should be weighed. The same objections might be made to proof in a suit between *265 A. ami 1?. of B’s admissions, but yet the evidence would be received. -The whole foundation of-this objection is, that.those wild should weigh evidence, are not competent to do it. It is an objection to trial by Jury' — not to the admissibility of testimony. But it is said, “ there is the same reason against it as against a man’s declarations to impeadh a deed he has made.” To this wo answer— It is not S(Y. In that case he is making evidence by his own declarations for Inins elf; or tie-is disinterested, and therefore his oath is better than his mere declaration. A testator cannot be examined on oath when a will is in contest-. A testator cannot have an interest to make testimony against what he wishes to take"place.
2. “ By authority Jackson v. Kniffen,* in this case there was no argument,' it'was decided by a bare majority", and that a vacillating majority.it goes too far, and therefore proves nothing — for it forbids any declarations of testator from being received. It purports to be founded solely on the statute of Frauds forbidding parol revocations, and therefore has no application here. It alleges to be supported by adjudications which do not uphold it.† It differs materially from the present case, because he knew it was unduly obtained, and yet did not revoke‡ Hero Reel supposed his will to be, other than it was and therefore did not revokp. - The opinion of the minority is a cqjiciusive refutation.
The case from Gallison is a mere'nisi' prim decision, made by a Jndge who is an eminent civilian, accustomed to decide both law' and fact. It is erroneous on its face, for it admits declarations made before,■ evidently an inferior species of evidence; and assigns bad reasons: 1. Spell declarations are in the nature of hearsay.” 2. {‘ They-are, suspicious,” (therefore they should be well weighed.') y3. “ Light sayings of testators .should not do 4 Ves. jr. 186 to 210. See XÁvingston’s opinion,